# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ROC ASAP, L.L.C., a Utah corporation, and )
ABAB, INC., an Oklahoma corporation, as )
Assignee of ROC ASAP, L.L.C, )
                                          )
       Plaintiffs,                         )            NO. CIV-12-461-D
                                          )
vs.                                             )
                                          )
STARNET INSURANCE CO., et al., )
                                          )
      Defendants.                    )

## ORDER

Before the Court are Defendant Starnet Insurance Company's Motion for Summary Judgment [Doc. No. 45] and Plaintiff ABAB, Inc.'s Motion for Partial Summary Judgment [Doc. No. 53]. The motions have been fully briefed and are at issue.

## Background

Plaintiff, ABAB, Inc. (Plaintiff) brings a breach of contract claim and a bad faith claim against Defendant, Starnet Insurance Co. (Defendant). Plaintiff's claims arise out of a property insurance policy issued by Defendant to Silverleaf Financial, LLC (Silverleaf). Silverleaf is the only named insured under the policy. At one time Silverleaf was a party to this lawsuit but has since been dismissed.[1] Plaintiff brings its claims against Defendant pursuant to Silverleaf's assignment of insurance claims and proceeds to Plaintiff.

    Defendant seeks judgment as a matter of law on Plaintiff's breach of contract claim. Defendant contends Silverleaf did not have an insurable interest in the subject property at the time of loss and, therefore, Plaintiff, as assignee of Silverleaf, has no claim to any insurance proceeds.

---

[1] On September 28, 2012, Plaintiff filed an Amended Complaint [Doc. No. 13] and joined Silverleaf as a defendant. However, Plaintiff subsequently dismissed its claims against Silverleaf without prejudice. *See* Notice of Voluntary Dismissal [Doc. No. 34].

Alternatively, Defendant contends the claim is barred by a contractual one-year limitations period. Defendant further seeks judgment as a matter of law on Plaintiff's claim for bad faith. Defendant claims under Maryland law, a bad faith claim is not legally cognizable. And, under Oklahoma law, Defendant claims a bad faith claim is a tort claim not subject to assignment or, alternatively, that there is no triable issue of fact that Defendant acted in bad faith.

Plaintiff seeks partial judgment as a matter of law on its contract claim. Plaintiff contends that Silverleaf did have an insurable interest in the subject property and that Plaintiff, as assignee of that interest, is entitled to recover any insurance proceeds payable under the policy.

## **Standard Governing Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322–23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal–Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir.1998). "To

accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed.R.Civ.P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed.R.Civ.P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## Statement of Undisputed Facts

Silverleaf procured insurance coverage from Defendant pursuant to a Lender Placed and Foreclosed Property Policy (the Policy). The Policy period ran from May 27, 2010 through May 27, 2011 [Doc. No. 45-9]. Effective January 7, 2011, property described as Heritage Mall (the Mall) was added to the Policy [Doc. No. 54-3].[2]

On February 3, 2011, a fire occurred at the Mall [Doc. No. 45-12]. At the time of the fire, ROC ASAP, LLC (ROC) owned the Mall.[3] Through a series of assignments, the underlying mortgage and note regarding the Mall was assigned to ROC on March 5, 2010. *See* Defendant's Motion [Doc. No. 45 Undisputed Fact No. 7]. Through foreclosure, ROC purchased the Mall on October 28, 2010, and obtained a deed dated November 23, 2010 [Doc. Nos. 54-11 and 54-12].

Also, at the time of the fire, Silverleaf was the sole member and 100% interest holder of ROC [Doc. No. 45-10]. On February 4, 2011, a Property Loss Notice on the Mall was completed

---

[2]The Policy requires that as newly foreclosed properties are acquired, the insured report those properties [Doc. No. 45-9 at 28]. Coverage is effective upon compliance with the reporting requirements. No challenge has been made to Silverleaf's compliance with the Policy's reporting requirements as to the Mall.

[3]ROC is no longer a party to this action. On January 18, 2013, ROC moved to dismiss its claims without prejudice [Doc. No. 31] which the Court granted. *See* Order [Doc. No. 33].

3

[Doc. No. 54-8]. Plaintiff received from Silverleaf an Assignment of Insurance Claim, with an effective date of April 11, 2011 [Doc. No. 54-24]. On April 26, 2012, Plaintiff filed this action.

## Discussion

**A.     Choice of Law**

The parties dispute whether the claims at issue are governed by Oklahoma law or Maryland law. "A federal court sitting in diversity . . . must apply the substantive law of the forum state, including its choice of law rules." *Otis Elevator Co. v. Midland Red Oak Realty Inc*., 483 F.3d 1095, 1101 (10th Cir.2007). Thus, the Court looks to Oklahoma's choice-of-law rules in determining what law to apply.

     **1.     Breach of Contract Claim**

Oklahoma's choice-of-law rule for contract actions is governed by Okla. Stat. tit. 15, § 162 which provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not *indicate* a place of performance, according to the law and usage of the place where it is made." *Id*. (emphasis added). Here, the parties agree that the Policy does not expressly designate a choice of law forum. On this basis, Defendant contends the law where the contract was made governs. Defendant seeks application of Maryland law because the Policy was "produced" in Maryland and, therefore, it was "executed" and "issued" in Maryland.

Conversely, Plaintiff contends Oklahoma law governs. Plaintiff correctly points out that even where no place of performance is expressly stated in a contract, the controlling issue is whether the contract *indicates* a place of performance. *See Panama Processes, S.A. v. Cities Service Co.*, 796 P.2d 276, 287 (Okla. 1990). Plaintiff claims the contract indicates the place of performance to be Oklahoma because the insured property is located in Oklahoma.

Although Defendant contends that under Oklahoma's choice of law rules, Maryland law governs Plaintiff's contract claim, Defendant further contends that Oklahoma law and Maryland law are indistinguishable as to the substantive breach of contract issue in this case – the requirement that the insured have an insurable interest in the subject property.[4] Additionally, Defendant relies exclusively on Oklahoma law to support its statute of limitations defense arising under the one-year period designated in the Policy. Defendant has in essence, therefore, waived application of Maryland law. *Compare Mauldin v. Worldcom, Inc.*, 263 F.3d 1205, 1211-12 (10th Cir. 2001) (where defendant's brief relied substantially more on one forum's precedent, argument that other forum's law should apply was so feeble as to constitute a waiver); *see also Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1231 n. 18 (10th Cir. 2000) (noting waiver of choice-of-law issue where party contended the laws of Kansas and Texas did not differ on the issue). Under these circumstances, the Court applies Oklahoma law to the contract claims at issue.

2. **Bad Faith Claim**

Under Oklahoma law, a bad faith claim is an independent tort. *See, e.g., McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981). Oklahoma applies the law of the state having "the most significant relationship to the occurrence and the parties" in tort disputes. *Hightower v. Kansas City Southern Ry. Co.*, 70 P.3d 835, 842 (Okla. 2003); *see also Hambelton v. Canal Ins. Co.*, 405 Fed. Appx. 335, 337 (10th Cir. 2010) (applying Oklahoma law's "most significant relationship" test to determine whether Oklahoma or Missouri law governed bad faith tort claim). To determine which state's relationship is most significant, Oklahoma courts consider four "place" factors: (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) each party's domicile,

---

[4]*See* Defendant's Motion [Doc. No. 45] at pp. 21-22 *citing* Md. Code, Insurance § 12-301 and Okla. Stat. tit. 36, § 3605 (both provisions addressing and defining requirement of insurable interest for enforcement of insurance contract).

5

residence, nationality, place of incorporation and place of business; and (4) where the relationship, if any, between the parties occurred. *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla.1974).

The parties dispute whether Oklahoma law or Maryland law governs Plaintiff's bad faith claim. Defendant seeks application of Maryland law, as a bad faith claim is not cognizable under that state's law. *See Johnson v. Federal Kemper Ins. Co.*, 536 A.2d 1211, 1213 (Md. Ct. Spec. App. 1988).[5] Plaintiff, conversely, seeks application of Oklahoma law. The analysis is complicated by the fact that Plaintiff brings its bad faith claim as assignee of Silverleaf.

For purposes of Plaintiff's bad faith claim, the "injury" is not the loss occasioned by the fire, but the alleged improper claims handling by Defendant. Although aspects of the claims handling occurred in Oklahoma (e.g. inspection of the Mall), the parties' communications, issuance of payment and other aspects of claims handling were directed out of Maryland and primarily occurred there. Thus, the first two factors weigh in favor of applying Maryland law. Defendant's principal place of business is Maryland, while Plaintiff is an Oklahoma company with its principal place of business in Oklahoma.[6] The place of the relationship between the parties is not determinative. As stated, Plaintiff brings the bad faith claim as assignee of Silverleaf. As such, Plaintiff and Defendant have no direct relationship.

On balance, it appears Maryland has the most significant relationship to the occurrence and the parties. The Policy issued out of Maryland, a significant portion of the claims handling occurred there, and Defendant's principal place of business is located there. However, as set forth *infra*, the

---

[5] Plaintiff concedes a bad faith claim is not cognizable under Maryland law. *See* Plaintiff's Response [Doc. No. 54] at 14 ("Plaintiff acknowledges that Maryland does not recognize a tort claim for bad faith against an insurer.").

[6] The insured, Silverleaf, is a Utah company with its principal place of business in Utah. No party contends Utah law applies.

6

claim is barred under either Maryland or Oklahoma law. For that reason, it is not necessary for the Court to decide the choice of law issue.

## B. Breach of Contract Claim

### 1. Insurable Interest

Plaintiff brings its claims in this lawsuit pursuant to an "Assignment of Insurance Claim" from Silverleaf [Doc. No. 54-24].[7] Plaintiff may bring this claim only if Silverleaf had an insurable interest to assign. *See Snethen v. Oklahoma State Union of Farmers Educ. and Coop. Union of Am.*, 664 P.2d 377, 379 (Okla. 1983) (under Oklahoma law, "[i]t is well settled that both the validity and enforceability of an insurance contract depend upon the presence of an insurable interest in the person who purchased the policy"); *see also Delk v. Markel American Ins. Co.*, 81 P.3d 629, 633-34 (Okla. 2003) ("An insurable interest is the relationship or connection a person must have with the subject matter of an insurance policy in order to insure it."). Thus, as an initial matter, the Court must determine whether Silverleaf had an insurable interest in the Mall.

---

[7]When Plaintiff filed its Complaint on April 26, 2012, Plaintiff brought suit as "assignee" of ROC. Plaintiff alleged its right to pursue claims against Defendant pursuant to an assignment from ROC. *See* Assignment [Doc. No. 54-23]. On March 14, 2013, Plaintiff filed a Supplemental Complaint [Doc. No. 42] and alleged it obtained an assignment of insurance claims and proceeds from Silverleaf on February 14, 2013, with an effective date of April 11, 2011. In its Reply to Plaintiff's Motion for Partial Summary Judgment, Defendant states: "the assignment that forms the basis of Plaintiff's allegations for breach of contract and bad faith did not exist until ten (10) months after the lawsuit was filed." *See* Reply [Doc. No. 56] at p. 2. The validity of the assignment speaks to the issue of whether Plaintiff is the real party in interest to pursue the claims for breach of contract and bad faith. But Defendant has not briefed issues surrounding the validity of the assignment and/or its effective date. Nor has Defendant briefed the effect, if any, of the lack of the assignment's existence at the time Plaintiff filed suit. The real-party-in-interest issue is for the benefit of defendants and, therefore, can be waived by defendants. *Federal Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1236 (10th Cir. 1990). Moreover, an assignment can give the assignee proper standing as the real party in interest even where a claim is not assigned until after the action has been instituted. *See generally Kilbourn v. Western Sur. Co.*, 187 F.2d 567, 571-72 (10th Cir. 1951); *see also* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1545 (2010). For these reasons the Court finds the validity of the assignment is not at issue.

The insurable interest requirement arises under both Oklahoma common law and statutory law. *See Delk*, 81 P.3d at 633 (*citing* Okla. Stat tit. 36, § 3605).[8] The requirement exists to discourage illicit uses of insurance. *Delk*, 81 P.3d at 635. An insurable interest exists in property where "the insured would gain some economic advantage by its continued existence or would suffer some economic detriment in case of its loss or destruction." *Snethen*, 664 P.2d at 380. The Oklahoma Supreme Court has stated that in determining whether an insurable interest exists, judicial consideration must be given to the following: (1) whether it appears the insured was betting on the loss of property with which he or she had little or no connection; and (2) whether recovery by the insured would exceed the loss actually suffered thereby providing motivation for destroying the property. *Delk*, 81 P.3d at 637. Further, the determination should not be based on an overly technical construction that would frustrate the legitimate expectations of the insured or would allow the insurer to avoid the very risk it intended to insure. *Id*.

The insurable interest need not be a strictly legal interest in the sense of title. *See, e.g., Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1360 (Okla. 1989) ("It has long been recognized in Oklahoma that an insurer may not escape its contractual obligation to one who has equitable title, beneficial ownership and undisputed possession of property, even though bare legal title rests in another."). *See also Gray v. Holman*, 909 P.2d 776, 781 (Okla. 1995) (to ascertain a person's insurable interest "[e]quating *insurable interest* with a *legally cognizable estate* is no longer sanctioned by our jurisprudence") (emphasis in original).

Here it is undisputed that Silverleaf is the only named insured under the Policy. It is further undisputed that on the effective date of coverage as to the Mall and at the time of loss, the Mall was

---

[8]Section 3605 states in pertinent part: "No insurance contract on property or of any interest therein or arising therefrom shall be enforceable as to the insurance except for the benefit of persons having an insurance interest in the things insured." Okla. Stat. tit. 36, § 3605.

owned by ROC and Silverleaf was the sole member and 100% interest holder of ROC. Defendant concedes this much. *See* Defendant's Motion [Doc. No. 45] at p. 23 ("[A]t the time of the fire loss, Silverleaf's only real connection to the property was its position as the sole member and manager of the entity that possessed any interests in the property, ROC ASAP, LLC."). Contrary to established case law, Defendant's contention that Silverleaf did not have an insurable interest is based on the false premise that the named insured must hold legal title to the property in order to have an insurable interest. Defendant fails to address, therefore, whether Silverleaf's interest in ROC is sufficient to create an insurable interest in the Mall.

In moving for partial summary judgment on this issue, Plaintiff asserts that because Silverleaf is the sole member and 100% interest holder of ROC, Silverleaf has an insurable interest in the Mall. Courts have found interests in a limited liability company or interests in related-type entities sufficient to create an insurable interest. *See, e.g., McQuay v. Penn-America Ins. Co.*, 91 Fed. Appx. 626, 628-30 (2003) (applying Oklahoma law and finding insurable interest where insured was one-third interest owner of LLC and LLC owned tavern destroyed by fire); *Standard Morgan Partners, Ltd. v. Union Insurance Co.*, 2011 WL 1806499 at * 5 (S.D. Tex. May 11, 2011) (unpublished op.) (plaintiff had an insurable interest arising from its ownership of entity that in turn owned the subject property); *Continental Ins. Co. v. Emerald Star Casino Natchez, LLC*, 2008 WL 1884046 (E.D. La. April 25, 2008) (unpublished op.) (as 100 percent owner of LLC, plaintiff had insurable interest in boat, title of which was held by LLC at time of loss); *see also* Steven Plitt, Daniel Maldonado, and Joshua D. Rogers, *Couch on Insurance 3d*, § 42:10 (3d Ed. 2013) ("A majority shareholder, especially in a closely held corporation, has generally been recognized to have a significant insurable interest in the corporate property . . . .") (citations omitted).

It is undisputed that ROC held legal title to the Mall. As the 100 percent interest holder of ROC, Silverleaf had an insurable interest in the insured property. It is undisputed that Silverleaf's interest existed at the time coverage was effective as to the Mall as well as at the time of loss.[9] Destruction of the Mall property, as an asset of the LLC owned solely by Silverleaf, would necessarily cause economic detriment to Silverleaf. *Compare Thompson v. Trinity Universal Ins. Co.*, 708 S.W.2d 45, 48 (Tex. Civ. App. 1986) (sole owner of corporation who obtained insurance on property in *her* name and not on behalf of corporation clearly suffered pecuniary loss from destruction of property and had insurable interest). For these reasons, the Court denies Defendant's motion for summary judgment on Plaintiff's breach of contract claim to the extent Defendant bases its motion on the faulty legal premise that the named insured must hold legal title to the insured property. And, the Court grants Plaintiff's motion for partial summary judgment on grounds Silverleaf's interest in ROC is sufficient to create an insurable interest in the Mall.

---

[9]As Defendant contends, Silverleaf had no interest in ROC at the time it procured the Policy from Defendant on May 27, 2010. But as a reporting-type policy, Silverleaf could add properties to the Policy as acquired. *See* n. 2. Silverleaf had acquired a 100 percent interest in ROC by the effective date of coverage on the Mall under the Policy.

## 2. The Contractual Limitations Period

Defendant further seeks summary judgment on Plaintiff's breach of contract claim on grounds it is barred by the one-year limitations period set forth in the Policy which provides:

**TIME LIMITATION FOR ACTION**

> No suit, demand for an arbitration or other action on this policy for the recovery of any claim shall be sustainable in any court or other forum unless all the requirements of this policy have been complied with and unless commenced within twelve (12) months after the inception of the loss.

*See* [Doc. No. 45-9] at p. 14.[10]

It is undisputed that the loss at issue occurred on February 3, 2011, the date of the fire. This action was not filed until April 26, 2012, more than one year following the loss. Defendant has met its initial burden of proof demonstrating a contractual violation of the limitations period. Under the plain language of the Policy, this action is untimely absent waiver or some other bar to Defendant's right to enforce the provision.

Plaintiff contends Defendant has waived enforcement of the limitations period. First, Plaintiff claims Defendant failed to raise the limitations provision as an affirmative defense in its answer as required by Fed. R. Civ. P. 8(c). But Plaintiff has not alleged any prejudice from Defendant's failure to raise the defense until summary judgment and has had adequate opportunity to address the defense. Under these circumstances, Defendant is not precluded from raising the defense. *See Ahmad v. Furlong*, 435 F.3d 1196, 1200-1202 (10th Cir. 2006) (standard governing motions to amend applies to determine whether defendant should be allowed to constructively amend answer to add affirmative defense by means of summary judgment). *See, also, Ring v. Lexington Apartments & Motor Inns-Oklahoma*, 3 Fed Appx. 847, 851 (10th Cir. 2001) (allowing

---

[10]Oklahoma law provides that a property insurer may limit the time when a lawsuit arising under the policy can be filed, but "such time shall not be limited to less than one (1) year from the date of the occurrence of the event resulting in the loss." Okla. Stat. tit. 36, § 3617.

11

statute of limitations defense to be raised in summary judgment motion despite defendant's failure to plead defense in its answer where no legally cognizable prejudice is shown).

Next, Plaintiff contends Defendant failed to comply with Oklahoma's Unfair Claims Practices Act (UCPA) and specifically, the notice requirement of Okla. Stat tit. 36, § 1250.7(E) which provides:

> Insurers shall not continue or delay negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney, for a length of time which causes the claimant's rights to be affected by a statute of limitations, or a policy or contract time limit, without giving the claimant written notice that the time limit is expiring and may affect the claimant's rights. Such notice shall be given to first party claimants thirty (30) days, and to third party claimants sixty (60) days, before the date on which such time limit may expire.

Okla. Stat. tit. 36, §1250.7(E). Plaintiff claims Defendant's alleged failure to comply with the UCPA renders the contractual limitations period unenforceable. Oklahoma's UCPA does not give rise to a private right of action. *Walker v. Chouteau Lime Co., Inc.*, 849 P.2d 1085, 1086-87 (Okla. 1993). Nonetheless, under Oklahoma law "provisions of an insurance contract may arise from statute as opposed to the express writing contained in the document agreed to by the parties." *Brown v. Patel*, 157 P.3d 117, 121 (Okla. 2007).

Defendant responds that it provided notice in a letter to Silverleaf dated December 30, 2011 [Doc. No. 54-31]. The letter advises that Defendant continues: (1) "under a full Reservation of Rights"; (2) that Defendant was requiring "the original purchase and sale documents from Silverleaf, LLC to show ownership for the date of loss"; (3) identifies the conditions of the Policy and the insured's duties following a loss; (4) identifies the time limitation provision of the Policy; and (5) sets forth the conditions for waiver under the Policy. Assuming the notice provisions of §1250.7(E) apply, Defendant appears to have satisfied those notice requirements.

Finally, Plaintiff contends Defendant waived its right to enforce the contractual one-year limitation period because Defendant made partial payments on the claim and continued its negotiations even after the expiration of the limitations period. Under Oklahoma law, an insurer may waive a contractual limitations period in an insurance policy if by its conduct, it leads the plaintiff to believe the claim will be paid. *See Prudential Fire Ins. Co. v. Trave-Taylor Co.*, 152 P.2d 273, 275 (Okla. 1944). Even where waiver is found, however, it is not absolute. Instead, the insurer must bring an action within a reasonable time of the insurance company's denial of the claim. *See Insurance Co. of North America v. Board of Ed. of Independent School Dist. No. 12, Texas County. Okl.*, 196 F.2d at 901, 904 (10th Cir. 1952) (applying Oklahoma law).

In *Prudential*, the insurance company hired an adjustor to determine the amount of fire loss sustained by the plaintiff's property. The adjustor then hired several experts and the experts took up the entire limitations period in completing their reports. The experts ultimately concluded the property suffered no appreciable damage but this information was not communicated to the insured until the limitations period had expired. Under these circumstances, the Court determined the evidence "was sufficient to support an inference that the defendant intended by its conduct to admit liability" and that the defendant waived the limitations period by not denying liability within enough time to allow plaintiff to bring suit within the limitations period. *Id*. at 275.

The instant action was filed within only a few months of the expiration of the limitations period and before any denial of the insurance claim. At the time the limitations period ran, the record shows Defendant had made prior assertions that it was negotiating under a reservation of rights [Doc. No. 54-31; *see also* Doc No. 56-2]. But it appears Defendant continued to negotiate the claim after the one-year limitations period ran.[11] For instance, just weeks before the expiration of

---

[11]These facts distinguish the instant case from *Clipperton v. Allstate Ins. Co.*, 151 Fed. Appx. 652,
(continued...)

the limitations period Defendant issued a report stating that it was "continuing to investigate" the claim [Doc. No. 54-32]. And during that same time frame, Defendant hired a new appraiser as part of its investigation of the claim [Doc. No. 54-34]. But, there is also evidence that the insured's own conduct was causing delay in ending negotiations on the claim – namely Silverleaf's failure to provide the purchase and sale documentation as requested by Defendant. *See, e.g.,* [Doc. Nos. 54-35; 54-36; 54-37]; *see also* [Doc. No. 45-17]. The parties continued to address these issues for several months after the expiration of the limitations period and even after this lawsuit was filed.

On the record presented, disputed issues of material fact exist as to whether Defendant has waived enforcement of the limitations period. *See Prudential*, 152 P.2d at 275 (where evidence supports an alleged waiver of enforcement of the limitations period, the issue becomes a question of fact for the jury). Therefore, Defendant's motion for summary judgment on grounds Plaintiff's breach of contract claim is untimely is denied.

**C.    Bad Faith Claim**

Defendant also seeks summary judgment on Plaintiff's bad faith claim. Plaintiff's claim is premised on Defendant's alleged failure to deal fairly and in good faith with Silverleaf on its claim under the Policy. Plaintiff brings this claim as assignee of Silverleaf.

As previously set forth, the parties agree that Maryland law precludes a tort action for bad faith breach of an insurance contract. The Court further addresses here whether the claim is cognizable under Oklahoma law.

---

[11](...continued)
654-55 (10th Cir. 2005). There the parties' negotiations ended one month before the expiration of the contractual limitations period which ran from the date of loss. But the insured waited nearly sixteen months before filing suit. The fact the insurance company had not formally denied the claim did not alter the limitations period. The negotiations had clearly ended before expiration of the one-year period and the insurance company had not engaged in conduct that would indicate a waiver of the limitations period. Under those circumstances, Plaintiff's sixteen-month delay in filing the action rendered the action untimely. *Id.*

Under Oklahoma law, an insurer has an implied-in-law duty of good faith and fair dealing which extends to all types of insurance policies. *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 161 (Okla. 1989). But the duty is limited. "There must be either a contractual or statutory relationship between the insurer and the party asserting the bad faith claim before the duty arises." *Id*.

In this case, there is no contractual or statutory relationship between Plaintiff and Defendant. Plaintiff's contention that the assignment from Silverleaf creates such a relationship is to no avail. This issue was addressed by the Oklahoma Court of Civil Appeals in a recent decision, *United Adjustment Services, Inc. v. Professional Insurors Agency, LLC*, 307 P.3d 400 (Okla. Civ. App. 2013). In *United Adjustment*, the court applied Okla. Stat. tit. 12, § 2017[12] and held the insured's bad faith claim against its insurer was not assignable to its adjuster.

The court relied on established Oklahoma Supreme Court precedent holding that a bad faith claim is a tort claim. *Id*. at 404 *citing Christian v. American Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977). And, therefore, the court concluded that section 2017 prohibits the assignment of a bad faith claim. *Id*. ("Section 2017(D) of Title 12 prohibits the assignment of claims not arising from contract . . . . Because a bad faith claim sounds in tort under Oklahoma law, this is such a case.").[13]

---

[12]Section 2017 provides: "The assignment of claims not arising out of contract is prohibited." Okla. Stat. tit. 12, § 2017.

[13]Plaintiff relies on an earlier decision of the Oklahoma Court of Civil Appeals, *Chimney Rock Ltd. Partnership v. Hongkong Bank of Canada*, 857 P.2d 84 (Okla. Civ. App. 1993), as authority that Okla. Stat. tit. 12, § 2017(D) does not preclude assignment of a tort claim where such claim "arises out of" a contract. *Chimney Rock* addressed the assignment of claims for interference with business relations and conspiracy to interfere with business relations related to a beneficiary's attempt to draw on a letter of credit.
    Plaintiff contends like the claims in *Chimney Rock*, a bad faith claim against an insurance company arises out of the contract of insurance and, therefore, is subject to assignment. But Plaintiff's argument ignores the clear pronouncement by the Oklahoma Supreme Court that a bad faith claim is an "independent and intentional tort." *See, e.g., McCorkle,* 637 P.2d at 587. Because the more recent pronouncement by the Oklahoma Court of Civil Appeals directly addresses the assignment of a bad faith claim against an insurance company, the Court finds more persuasive the holding in *United Adjustment* and concludes the claim is not

(continued...)

Here, Plaintiff only brings its bad faith claim as assignee. A bad faith claim is a tort claim under Oklahoma law. Because Oklahoma law prohibits the assignment of a tort claim, Plaintiff's bad faith claim fails. *See also Lester v. Minnesota Life Ins. Co.*, 2014 WL 183937 at *3 (N.D. Okla. Jan. 14, 2014) (unpublished op.) (dismissing the plaintiff's tort claims against insurance company, including bad faith claim, where his claims were based solely upon an assignment as such claims are precluded by Okla. Stat. tit. 12, § 2017(D)). Accordingly, under either Maryland or Oklahoma law, Defendant is entitled to judgment as a matter of law in its favor on Plaintiff's bad faith claim.

IT IS THEREFORE ORDERED that Defendant Starnet Insurance Company's Motion for Summary Judgment [Doc. No. 45] is GRANTED in part and DENIED in part. Defendant's Motion is DENIED on Plaintiff's breach of contract claim. Defendant's Motion is GRANTED on Plaintiff's bad faith claim.

IT IS FURTHER ORDERED that Plaintiff ABAB, Inc.'s Motion for Partial Summary Judgment [Doc. No. 53] is GRANTED.

IT IS SO ORDERED this 20th day of February, 2014.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[13](...continued)
subject to assignment. In so finding, the Court recognizes that neither opinion of the Oklahoma Court of Civil Appeals has precedential value. The Court relies on *United Adjustment* for its persuasive value. *See* Okla. Stat. Ann. tit. 20, § 30.5 ("No opinion of the Court of Civil Appeals shall be binding or cited as precedent unless it shall have been approved by the majority of the justices of the Supreme Court for publication in the official reporter."); *id*. tit. 12, Appendix 1, Rule 1.200(d)(2) (establishing that opinions of the Court of Civil Appeals ordered released for publication by that court but not by the Oklahoma Supreme Court have persuasive effect but are not accorded precedential value).